CAROLINE M. BECHTEL, APPELLANT, V. ALBERT PRICE ET AL., APPELLEES.

FILED MARCH 18, 1925.   No. 23022.

1. **Deeds:** CONSIDERATION.   Though the consideration paid be greatly less than the value of the property purchased, that fact is not of itself sufficient to impeach the validity of the transaction, particularly when it appears that the vendor is competent and not under undue influence.

2. ———: CANCELATION.   Evidence examined, and *held* that the plaintiff's decedent was not incompetent to make the conveyance of land complained of; also, that at the time of settlement for said land and payment of the balance of the consideration named in the deed, said decedent was in the full possession of his faculties and well knew and understood the purpose and effect of the transaction entered into; and, further, that he was under no undue influence either in making said deed or receiving said settlement.

APPEAL from the district court for Perkins county: CHARLES E. ELDRED, JUDGE. *Affirmed.*

*Hastings & Hastings* and *J. J. Laton,* for appellant.

*Scott & Scott, contra.*

Heard before MORRISSEY, C. J., ROSE, GOOD and EVANS, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

James Bechtel, appellant's husband and her decedent, had been a merchant at Madrid, Nebraska, where he had accumulated considerable property, including certain accounts and choses in action, a store building, and the real estate involved in this controversy, 480 acres of land. In May of 1918 he became ill in mind and body, and on the 5th day of June following was duly placed under guardianship as an incompetent. After some months in hospitals at North Platte and Omaha, he spent perhaps 90 days at the home of the appellant, who was a trained nurse living in Denver, apparently then and there contracting the attachment for her which later resulted in their marriage. About March 20, 1919, he returned to Madrid, and applied for and obtained a discharge from guardianship, together with the restoration of his property. All this seems to have been by orderly proceedings in the county court and without objection on the part of his relatives or anybody else. On the 3d day of April, 1919, he conveyed the said land to Albert Price for a consideration of $9,600, as stated in the deed.

He then left Price in charge of his store building, collections, and business generally at Madrid, giving him a power of attorney authorizing him in that behalf, and went to Denver, where he married the appellant on the 15th day of May of the same year. He died in February of 1921, leaving a will made shortly after his marriage, by which he bequeathed and devised all his property to the appellant.

This suit was brought to set aside the deed from Bechtel to Price, on the ground of insufficent consideration, mental incompetency on the part of the former, and undue influence on the part of the latter. Hicks was made a party defendant because he, the father-in-law of Price, took a mortgage on the land to secure him for money advanced to pay Bechtel. The district court found against appellant, who was plaintiff

below, and in favor of the appellees, who were defendants.

An examination of the record leaves no doubt in the mind of the court that the value of the land was greatly in excess of the amount paid for it.    It was probably worth $20,000.

Price was evidently considered a friend by Bechtel.    He had represented him some years before in a dispute over corn.    Bechtel invariably addressed him in his letters as "Dear friend;" he addressed Bechtel as "Dear Jim," and signed himself "Buster."    But he was not Bechtel's attorney in fact until some time after the making of the deed.    Otherwise, there is nothing to indicate that he possessed any particular influence over the decedent, or that he dealt with him other than at arm's length.

There is question as to the amount actually paid for the land.    But we think it was $9,600.    Besides the stated consideration of the deed, Price testified that he gave Bechtel a purchase money note and mortgage for that much at the time he received the deed.    This stands unchallenged in the record.    The evidence further conclusively shows that he paid $6,500 on this indebtedness at appellant's home in Denver on the 10th and 16th days of July, 1919; and that at said time he took an order from Bechtel upon the latter's attorney, Theodore F. Barnes, for the return of said note and mortgage.    It also shows that Price and Bechtel met and transacted business at Sterling, Colorado, on the 23d day of April, 1919.    Price testified that at this time and place he paid Bechtel $3,100 on the land.    Similar testimony on the part of Hicks, who was present, was offered.    But this was excluded; and that of Price in regard to such payment was stricken out.

The proof fairly shows, despite the fact that Mrs. Bechtel testified that her husband received no payments from Price except said $6,500 and a remittance of $75, that the consideration was not only $9,600, but that the same was fully paid.    Taking into account her interest in the event of the suit, and the further fact that she was not in a position to

know what her husband had received, the evidence prepon-derates in favor of the appellees on this point.

The condition of plaintiff's decedent at the time of the settlement at Denver, together with the low price received for the land, must determine the controversy. Moreover, the testimony of the appellant, who describes what took place upon that occasion, must largely support the claim of her petition if she is to prevail in her suit. For it is patent that the mental state of Bechtel on July 10, 1919, is the thing to consider, and not his mental state of the preceding March, or earlier, when he was under guardianship, and when a few of his acquaintances thought that he was not in a condition to do business.

Mrs. Bechtel testifies that at the time in question, while Price and Hicks were there to settle, Bechtel was excited, walking the floor, complaining that Price had the advantage of him in having the possession of the land, and accusing him of wanting to get his property away from him. She also stated in her testimony that Price first attempted to get him to take less than $6,500, offered him $4,000, then a little more, and then the $6,500 which was accepted. She testifies, too, that both Price and Hicks sought to work upon Bechtel's fears by suggesting to him that he had better get his money and property into the state of Colorado lest his relatives in Nebraska should again try to put him under guardianship. And it is strongly urged by counsel for the appellant that what Bechtel did in accepting the settlement was done only because he considered it a matter of necessity. It also appears from the correspondence between the parties, prior to the settlement, that Price occasionally hinted at the disposition of the Nebraska relatives to make him trouble.

On the other hand, it appears that upon the day of settlement the appellant was at all times present by the request of her husband, and that she knew and stated at the time that Bechtel need be in no fear of guardianship proceedings because he was in Colorado, and because she would have the first say in regard to such a step, and would not permit it. It further appears by her own testimony that she advised

her husband during the negotiations to step to the telephone and call up a lawyer friend for advice, and that he did so; and further that Price and Hicks left the house upon two different occasions during the negotiations in order that Bechtel and appellant might have opportunity to confer privately. She further testifies that when Bechtel came to her house in November of 1918, and for three months thereafter he seemed to be in full possession of his faculties, although he was under the doctor's care; and that up to the time that Price came to settle she had never seen anything wrong with him. This last statement is of more than ordinary significance, since she had known Bechtel for a period of nearly eight months immediately antedating that time, during which she was almost constantly with him and had every reason to observe him carefully, first as his nurse, then as a woman sought by him in marriage, and finally as a husband and provider.

In addition to all of this, we must reckon with some very significant circumstances in connection with his condition. He was released from guardianship upon finding by the court of his return to health and mental competency. No one made any objection to it, not even his guardian or his relatives, his guardian making due account to him of some $2,600 of money which he had in his hands. With all of the opportunity in the world to know of his condition, as heretofore suggested, this trained nurse married him within a month or so after such release. His letters to Price, covering a considerable period, evince no infirmity of mind. He conducted his business from the time of his release, had moneys collected, sold the store building which he owned in Madrid through an agent, and otherwise acted as a competent person. He made a will within a few months after such release, which will was probated both in Colorado and in Nebraska, apparently without any objection. The appellant claims under said will.

From what has been shown the court is convinced that the appellant was not under any undue influence. On the contrary, it seems that he had sufficient power of mind to

exclude that hypothesis, and it is obvious that in any event he was protected by his residence in Colorado, by the presence of his wife, and by the society of his friends.

The appellee Hicks testifies that no such conversations and negotiations as appellant testifies to were had. But, supposing they were, the remarks which she says were made by her husband were not enough of themselves to indicate any lack of mental capacity on his part. They were such as might naturally have been made by a man who wanted all that was coming to him in a trade. Not a word was said in denial of his right to deal or not to deal. He was apparently in good memory and sound mind, and he had the benefit of both the advice of his wife and his attorney.

Under these circumstances it seems to the court that, even had the deed of April 3, 1919, been assailable, the settlement arrived at on the 10th of July, 1919, was enough to make the transaction good, and was sufficient to amply sustain the judgment and finding of the court below.

There are, we think, no questions of law to be decided. Though familiar with the cases cited by counsel for the appellant, we have reexamined them. Conceding the rule to be as in said brief stated, and conceding that the trial is *de novo* in this court, we arrive at the same conclusion as did the learned trial court, and the judgment of that court must be, and is,

AFFIRMED.